ALMERIC H. PAGET v. ELECTRICAL ENGINEERING & SUPPLY COMPANY.[1]

December 24, 1896.

Nos. 10,386—(126).

| 67 | 31 |
| s82 | 245 |
| 67 | 31 |
| s85 | 311ᵢ |

**Hearsay Evidence.**

In an action where the controversy related to the execution and acceptance of a written lease, a witness was permitted to testify, against objection, as to the declarations of a third person tending to establish the time of execution and acceptance of such lease, which declarations were not a part of the res gestæ. *Held*, that the admission of such declarations as testimony was error.

Appeal by defendant from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Reversed.

*Walter C. Tiffany* and *Edward C. Gale*, for appellant.

*How & Butler*, for respondent.

BUCK, J. The defendant corporation occupied a part of a certain building in the city of St. Paul from October 1, 1891, to October 1, 1892, under a written lease for that year from Mrs. Ella B. Lawton, the owner of the whole building, at a rental of $100 per month. After the expiration of this lease, defendant remained in the possession of the premises until May 1, 1893, when it occupied an additional space or room at an increased rental of $195 per month for the whole premises, rented and occupied them until about July 15, 1893, when it removed to the city of Minneapolis, and wholly abandoned the premises in question. In the meantime, and on December 31, 1892, the plaintiff herein was appointed by the district court of Ramsey county, in an action brought to foreclose a certain mortgage upon the premises, the receiver thereof, and of all the interests of Mrs. Lawton therein. After such appointment, the rental was paid to the receiver, except the amount claimed to be due for the months of August, September, October, and November.

This action is brought to recover the rental due for such four months, and accrued interest, upon a lease which he alleges to have been made by the defendants and Mrs. Lawton some time between

[1] Reported in 69 N. W. 475.

the termination of the first lease, in October, 1892, and prior to December 31, 1892, the day of his appointment as receiver. Upon the trial it was admitted that the five-years lease was only signed by Mrs. Lawton. The defense was: First, that the written lease was executed, if at all, at some time in the month of March or April, 1893, subsequent to the appointment of the receiver, and, not being signed or executed by defendant, was void under the statute of frauds; second, that no such lease was ever accepted or acted upon, and never took effect; and, third, a subsequent surrender of the lease, and its acceptance by plaintiff, through Dr. Lawton, the husband of the former owner, acting as the plaintiff's agent. The cause was tried by a jury, and it rendered a verdict in favor of the plaintiff for $1,020.79.

The plaintiff, upon the trial, sought to show that the so-called "five-years lease" was executed by Mrs. Lawton prior to the time of the appointment of the receiver. This, of course, was necessary, because her right to do so terminated with the appointment of the receiver, December 31, 1892. The most material testimony given upon the trial in behalf of the plaintiff was that of Dr. Lawton, the husband of the owner of the property. This testimony related to the execution and acceptance of the lease, the amount of rental, and its time of payment, and extent of the premises rented and occupied, and the amount of rent to be paid, and also to his management of the building of which defendant occupied a part. In some respects his testimony was not very satisfactory, and plaintiff sought to strengthen it by introducing in evidence declarations or admissions made by him to another person subsequent to the appointment of the receiver. After the defense had rested, the plaintiff's attorney recalled the witness Stillwell, and the following proceedings took place:

"Mr. How. You have testified that when Mr. Paget was appointed receiver you took charge of the property for him. Now, state, if you please, what was your first step with regard to taking care of the property, with regard to investigating the tenants, etc. A. My first step was to get authority to collect the rents, and to notify the tenants. I served notice on them all to pay the rent to A. H. Paget, receiver. Then I went to Dr. Lawton, and got my information from him as to what all the tenants were paying. That must have been very soon after the first of the year. I don't think I went right at it the first day, but it was soon after. Q. What, if anything, did Dr. Lawton say

to you about the lease of this defendant? (Objected to by defendant as incompetent, irrelevant, immaterial, and hearsay.) Mr. How: I desire to show by this witness that at the time when he went to get this information from Dr. Lawton, who had theretofore had the building in charge—I desire to show that his information was at that time, from Dr. Lawton, among other matters, that this company would have a new lease from the 1st of May at a larger rental (one hundred and ninety-five dollars per month); that they were at that time paying one hundred and fifty dollars,—all this as bearing upon the question of the agreement for one hundred and ninety-five dollars having been made prior to the 31st day of December. The Court: Without going into the details of that conversation, he can state the details in regard to the lease at that time. I don't want his conversation, but his information on taking charge of the building as to the condition of that lease. Mr. Gale: From Dr. Lawton? The Court: Yes, sir. Mr. Gale: We shall object to that equally strenuously. It seems to me clearly hearsay. Dr. Lawton has already testified as to what he has said, and we have not attempted to impeach his testimony. We think that this testimony would be admissible for them only to brace up the doctor's testimony after impeachment. The Court: Well, Dr. Lawton was at that time the agent of the assignor for whom this receiver was appointed. (Objection overruled. Defendant excepts.) A. I was told that the original lease had expired on the 1st of October previous, and at that time they were paying one hundred and fifty dollars a month for the store and I think one room upstairs; but that they were to have the whole of one side of the second floor from the first of May. And that their lease was to be one hundred and ninety-five dollars per month. (This witness was not cross-examined. Testimony closed.)"

This evidence was offered and received for the purpose of its bearing upon the question of the five-years lease, and the time of its making and acceptance. The exact date to which this conversation relates does not appear, but it does appear that it was subsequent to the appointment of the receiver, and that it was also subsequent to the time when Stillwell had served notice on the defendants to pay rent to Paget, the receiver. According to Dr. Lawton's own testimony, it was not made at or near the time when he made the lease with, and left it with, the defendant. In no aspect of the case can it be said that it was made at or near the time when this conversation between Dr. Lawton and defendant took place, but long subsequent to the time of the appointment of the receiver, and when Dr. Lawton neither had possession in fact nor in law of the premises in controversy, nor any right to such possession. It therefore could not be said that it formed any part of the res gestæ, nor as the dec-

laration or admission of a party in possession of the property against his own interest or otherwise. Dr. Lawton disclaimed being an agent in any manner or representing Paget as receiver.

The admission, therefore, of this testimony might have had a very mischievous and injurious effect upon the minds of the jury, and have been seriously prejudicial to the rights of the defendant. It cannot, by any means, be said that the fact of the acceptance of the lease and its terms had been in fact already established by the weight of evidence. It was for the very purpose of establishing this fact of the acceptance of the lease that it was offered in evidence by the plaintiff. Dr. Lawton was an interested witness, and there was but little testimony given to corroborate his own, and we cannot but regard the admission of such evidence as hearsay, and clearly erroneous. We cannot, in any view of the law, regard the admission of this testimony as harmless. If the plaintiff could bolster up his case by the narrative of one person, which at that time was no part of the transaction itself, he could introduce innumerable witnesses to testify to the same declarations, and its entire probative force would ultimately rest upon the unsworn statement of one person. It is quite impossible for this court to say just how much influence such testimony had upon the minds of the jury, but the fact remains that it might have influenced them to a preponderating extent, and have been injurious to the rights of the defendant.

Plaintiff's counsel seems to assume that the only issue in the case was whether Mrs. Lawton signed the five-years lease before or after December 31, 1892. We do not understand the case in that way. The lease must have been accepted by the defendants in order to become operative and binding. Whether the evidence justified the jury in finding that defendants had accepted the lease, it is not necessary for us to decide. But, to avoid misapprehension on another trial, we suggest that, conceding that Mrs. Lawton signed this lease in duplicate, and that Lawton, her agent, handed them to defendants before December 31, 1892, the fact that defendants received the papers, and retained them in their possession without signing them, would not necessarily amount to an acceptance.

Order reversed, and new trial granted.